IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 13, 2013

**STATE OF TENNESSEE v. JEFFREY WALTON**

**Appeal from the Criminal Court for Shelby County**
**No. 11-02773      Lee V. Coffee, Judge**

**No. W2012-01609-CCA-MR3-CD  - Filed January 31, 2014**

The defendant, Jeffrey Walton, was convicted by a Shelby County Criminal Court jury of vandalism over $10,000, a Class C felony, and burglary of a building, a Class D felony, for which he received sentences of fifteen years as a persistent offender and twelve years as a career offender, to be served consecutively, in the Department of Correction. On appeal, he challenges the sufficiency of the convicting evidence. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and ROGER A. PAGE, JJ., joined.

Stephen C. Bush, District Public Defender; Harry E. Sayle, III (on appeal), Michael J. Johnson and John Zastrow (at trial), Assistant Public Defenders, for the appellant, Jeffrey Walton.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and Stacy M. McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This case involves the defendant's unlawful entry into and vandalism of Barrow-Agee Laboratories ("Barrow-Agee"), a food and drug testing laboratory in Memphis, the evening of January 13, 2011.

Brenda Banks, a chemist and twenty-two-year employee of Barrow-Agee, testified that she closed the building at 6:15 p.m. on January 13, 2011. She said that no one was in the building when she left that evening and that she secured the premises by setting an alarm. When she left, the building was in good condition and none of the damage shown in the photograph exhibits was present.

Thomas Bradberry, a security guard for Barrow-Agee, testified that he received a call around 11:20 p.m. on January 13 that the alarm at the laboratory had been triggered. When he arrived and assessed the scene, he heard some noise coming from the back of the building that sounded like someone running. He observed a hole in the wall where the venting system was located. Bradberry explained that the venting system had been "busted" out and a light was shining outward through the hole. He saw a pair of legs emerge from the hole, and he ordered the person to raise his hands. However, the person went back inside the building. Bradberry was unable to see the person's face, but he saw that the person was wearing an army fatigue jacket and tennis shoes.

Bradberry testified that the building had plate glass windows, making it possible for him to see inside while the officers were searching for the intruder. Through the windows, he saw the intruder's feet partially fall through the ceiling of three separate offices or rooms in the building. He saw the police bring the intruder out of the building in handcuffs and noted that the intruder was wearing the same clothing as the person he had seen earlier trying to exit the hole at the back of the building. He heard the intruder tell the officers that he was homeless and had entered the building looking for something to eat. Bradberry entered the building after the intruder was arrested, and he observed that the ceiling tiles were "tore up" and the doors to several refrigerators and incubators were ajar.

Officer Pierce Hayden with the Memphis Police Department testified that he answered the call at Barrow-Agee. He observed a hole in the south wall of the building and set up a perimeter outside. While the perimeter was being set up, Officer Hayden saw a man wearing a black and white skull cap stick his head out of the hole. Officer Hayden ordered the man to come out of the hole and attempted to grab him, but the man retreated back inside the building.

Officer Hayden testified that he called for a K9 unit to come to the scene, and police maintained the perimeter while the K9 unit searched the building. No one was seen leaving the building while the K9 unit was searching. After the K9 unit emerged unsuccessfully, Officer Hayden and other officers went inside to search. Officer Hayden entered an attic area and began checking the beams and rafters, where he found the intruder in the northeast corner of the building. He ordered the man to come toward them, but the man lost his balance and fell through the ceiling. Officer Hayden followed the man through the hole in

the ceiling and took him into custody. At trial, Officer Hayden identified the defendant as the man he saw trying to exit from the hole in the back of the building and ultimately arrested after the man fell through the hole in the ceiling.

Officer James Oliver with the Memphis Police Department testified that he responded to the scene with a K9 unit. Officer Oliver announced his presence and informed the intruder that he was going to release a dog into the building. When he got no reply, Officer Oliver entered the building with the K9 unit. The dog went to one specific room and indicated on an odor in the room by moving in a circle. The dog's movement indicated that he smelled something but could not determine its precise location. The dog then looked toward the ceiling. Officer Oliver announced his presence again and ordered the person to exit the ceiling, but he received no immediate response. After a minute, he heard someone moving in the ceiling. Officer Oliver exited the building and told the other officers where he heard a noise and an odor was detected by the K9 unit. Officer Oliver thereafter assisted in searching for the suspect, and he observed the suspect fall out of the ceiling from the attic. He identified the defendant as the man he saw fall from the ceiling.

Officer James Smith, a crime scene investigator with the Memphis Police Department, processed and photographed the scene. Officer Smith stated that a black and white skull cap, a pair of brown gloves, and a yellow flashlight were recovered from the ceiling inside the building.

Edgar Tenent, one of the owners of Barrow-Agee, testified that the laboratory was a freestanding building with thirty to forty rooms and was not open to the public. Tenent was called to the scene in regards to the break-in and, when he arrived, saw the police leading the defendant away from the building. He had never seen the defendant before, and the defendant did not have permission to enter the laboratory. Inside the laboratory, Tenent observed that many ceiling tiles were damaged and insulation had dropped down; wires were hanging through the ceiling in different parts of the building; and cabinet, refrigerator, and incubator doors were opened. He said it was "[j]ust a total mess in a large part of the building." It was determined that entry had been gained into the laboratory through an exhaust fan on the back of the building. Tenent explained that a safety cage covering the exhaust fan had been removed and the concrete around it had been knocked away, allowing entry. Tenent identified numerous photographs of the damage.

Brad Staples, an insurance adjustor, inspected the building on January 14, 2011, the day after the break-in. He observed damage to multiple rooms in the building, stemming from someone crawling around in the heating and air conditioning system located above the acoustical drop tile ceiling. In addition, there was damage to the alarm system, the building had to be repainted, and the insulation had to be replaced. The total value of the damage was

$23,654.74. Staples said that he negotiated for the lowest bids and, although it was possible someone could have done the work for less, no one could have done it for less than $10,000. He testified that the photographs of the damage exhibited to the jury were accurate representations of the damage he observed in the building.

Following the conclusion of the proof, the jury convicted the defendant, as charged, of vandalism over $10,000 and burglary of a building.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant challenges the sufficiency of the convicting evidence, arguing that there was no proof of his intent in entering the Barrow-Agee building to support the burglary conviction or that the damage was caused knowingly to support the vandalism conviction.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). It is for the jury to determine the weight to be given the circumstantial evidence and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. State v. James, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754

S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

## A. Burglary of a Building

The defendant claims that the evidence is insufficient to support his conviction for burglary of a building because there was no proof of his intent in entering the building. He asserts that nothing was found on his person when he was captured and that he had no means to transport anything of size. He insinuates, without so claiming, that he may have broken in because it was cold and he was homeless.

Burglary occurs when one, "without the effective consent of the property owner, . . . [e]nters a building other than a habitation . . . not open to the public, with intent to commit a felony, theft or assault[.]" Tenn. Code Ann. § 39-14-402(a)(1).

In the light most favorable to the State, the evidence shows that the defendant broke into Barrow-Agee Laboratories the night of January 13, 2011, a building not open to the public and without the permission of the owners. This court has previously noted, in the context of reviewing a burglary conviction, that "[o]ne's actions are circumstantial evidence of his intent." State v. Barker, 642 S.W.2d 735, 737 (Tenn. Crim. App. 1982). Once inside the building, the defendant opened cabinets, incubators, and refrigerators, suggestive of an intent to steal. The fact that no property was found on him when he was arrested did not preclude the jury from inferring an intent to commit a theft, considering he was apprehended after gaining entry into a building containing property of value. See State v. Ingram, 986

S.W.2d 598, 600 (Tenn. Crim. App. 1998). The defendant's insinuation that he may have broken in because it was cold and he was homeless was not presented to the jury, and there was testimony at the trial that the defendant was heard telling the police that he broke into the building to look for food. There is sufficient proof for a rational trier of fact to find the defendant guilty of burglary of a building.

## B. Vandalism over $10,000

The defendant does not deny that the amount of damage exceeded $10,000; rather, he claims there was no proof that the damage was caused knowingly. He contends that the State failed to prove that the damage was caused other than by accident.

Vandalism is defined as: "Any person who knowingly causes damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent is guilty of [vandalism]." Tenn. Code Ann. § 39-14-408(a). "'Damage' includes, but is not limited to: (A) [d]estroying, polluting or contaminating property; or (B) [t]ampering with property and causing pecuniary loss or substantial inconvenience to the owner or a third person." Id. § 39-14-408(b)(1).

In the light most favorable to the State, the evidence shows that the defendant broke a safety cage encased in concrete to gain unlawful entry into the Barrow-Agee building. Once inside, he damaged the alarm system and broke through multiple ceiling tiles. The evidence is sufficient for a rational trier of fact to conclude that the defendant acted knowingly.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE